# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

Case No. 13-CV-00329 (VEB)

DORIENE L. ARNETT,

                    Plaintiff,                    DECISION AND ORDER

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

## I. INTRODUCTION

In June of 2010, Plaintiff Doriene L. Arnett applied for Supplemental Security

Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social

Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by the Law Offices of Dana Madsen, Joseph Linehan, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 7).

On June 3, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

## II. BACKGROUND

The procedural history may be summarized as follows:

On June 18, 2010, Plaintiff applied for SSI benefits and DIB, alleging disability beginning May 6, 2007. (T at 1647-71).[1]  The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On February 1, 2012, a hearing was held before ALJ Caroline Siderius. (T at 54).  Plaintiff appeared with her attorney and testified. (T at 78-88). The ALJ also received testimony from Daniel McKinney, a vocational expert (T at 88-98),

---

[1] Citations to ("T") refer to the administrative record at Docket No. 12.

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

Thomas McKnight, a medical expert (T at 64-76), and Anthony Francis, a medical expert. (T at 59-64).

On February 16, 2012, ALJ Siderius issued a written decision denying the applications for benefits and finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (T at 19-46).   The ALJ's decision became the Commissioner's final decision on July 18, 2013, when the Social Security Appeals Council denied Plaintiff's request for review.  (T at 1-6).

On September 12, 2013, Plaintiff, acting by and through her counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on November 18, 2013. (Docket No. 11).

Plaintiff filed a motion for summary judgment on April 7, 2014. (Docket No. 15).  The Commissioner moved for summary judgment on May 19, 2014. (Docket No. 16).  Plaintiff filed a reply brief on June 9, 2014. (Docket No. 18).

For the reasons set forth below, the Commissioner's motion is denied, Plaintiff's motion is granted, and this case is remanded for calculation of benefits.

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

# III. DISCUSSION

## A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2)  a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

1    **C.    Commissioner's Decision**

2         The ALJ found that Plaintiff had not engaged in substantial gainful activity

3    since May 6, 2007, the alleged onset date, and met the insured status requirements of

4    the Social Security Act through September 30, 2010. (T at 24). The ALJ determined

5    that Plaintiff's status post lumbar discectomy, fibromyalgia, diabetes, shoulder

6    tendonitis, obesity, and depression were impairments considered "severe" under the

7    Act. (Tr. 24-25).

8         However, the ALJ concluded that Plaintiff did not have an impairment or

9    combination of impairments that met or medically equaled one of the impairments

10   set forth in the Listings. (T at 25-27).  The ALJ determined that Plaintiff retained the

11   residual functional capacity ("RFC") to perform light work, as defined in 20 CFR §

12   416.967 (b), except that she should avoid concentrated exposure to extremes of cold,

13   vibrations, and heavy machinery, and unprotected heights. (T at 27).  The ALJ also

14   concluded that Plaintiff should not climb ladders, ropes, or scaffolds, and should

15   only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, crawl, or

16   reach overhead. (T at 27).  With regard to the mental demands of work, the ALJ

17   found that Plaintiff could perform work with 1-3 step tasks, but no detailed work and

18   no work that required more than occasional public and co-worker contact. (T at 27).

19

20

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

The ALJ concluded that Plaintiff could perform her past relevant work as a hotel housekeeper/cleaner. (T at 39).  In the alternative, considering Plaintiff's age (25 on the alleged onset date), education (high school), work experience (unskilled, and RFC (light work, with non-exertional limitations outlined above), the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 40).

As such, the ALJ concluded that Plaintiff was not disabled, as defined under the Act, between May 7, 2008 (the alleged onset date) and February 16, 2012 (the date of the ALJ's decision) and was therefore not entitled to benefits. (Tr. 41).  As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

**D.    Plaintiff's Arguments**

Plaintiff contends that the Commissioner's decision should be reversed.  In particular, she argues (1) that her impairments meet or medically equal Listing § 1.04A and (2) that the ALJ did not properly assess the medical evidence with her regard to her mental health impairments.  This Court will examine both arguments in turn.

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

1

2                                    **IV. ANALYSIS**

3    **A.     Listing §1.04A**

4          At step three of the sequential evaluation, the ALJ must determine whether the

5    claimant has an impairment or combination of impairments that meets or equals an

6    impairment listed in Appendix 1 of the Regulations (the "Listings"). *See* 20 C.F.R.

7    §§ 404.1520(d), 416.920(d). If a claimant meets or equals a listed impairment, he or

8    she is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City*

9    *of New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986); *see also*

10   *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *see also* 20 C.F.R. §§

11   404.1525(a); 416.925(a).

12         An impairment meets a Listing if the impairment matches all of the medical

13   criteria specified in the Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct.

14   885, 107 L. Ed. 2d 967 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

15   1999). An impairment or combination of impairments that satisfies some, but not all,

16   of the criteria does not qualify. *Sullivan*, 493 U.S. at 530; *Tackett*, 180 F.3d at 1099.

17         The claimant bears the burden of proving that she has an impairment or

18   combination of impairments that meets or equals the criteria of a listed impairment.

19   To satisfy this burden, the claimant must offer medical findings equal in severity to

20
DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b).

If a claimant's impairment does not satisfy the Listings criteria, he or she may still be disabled if the impairment "equals" a listed impairment. 20 C.F.R. § 404.1520(d). Equivalence will be found if the medical findings are (at a minimum) equal in severity and duration to the Listed impairment. *Marcia v. Sullivan*, 900 F.2d 172, 175 (9th Cir. 1990). To determine medical equivalence, the Commissioner compares the findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. §§ 416.924(e), 416.926.

If a claimant has multiple impairments, the ALJ must determine "whether the combination of [the] impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a). The claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1996). "A finding of equivalence must be based on medical evidence only." *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)(citing 20 C.F.R. § 1529(d)(3)).

"[I]n determining whether a claimant equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia*, 900 F.2d at 176 (9th Cir. 1990). A remand may

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

be required if ALJ fails adequately to consider a Listing that plausibly applies to the claimant's case. *See Lewis*, 236 F.3d at 514.

Here, Plaintiff contends that her impairments satisfy the requirements of § 1.04A of the Listings.  That Listing provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet    arthritis, vertebral fracture), resulting in compromise of a nerve root . . . or the  spinal cord. With . . . [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

The ALJ considered this Listing and concluded that Plaintiff had not established that her impairments met or equaled the criteria.  (T at 25).  In particular, the ALJ noted the lack of evidence of nerve root compression. (T at 25).  This Court finds the ALJ's decision supported by substantial evidence.

Plaintiff is obliged to provide some plausible theory that her impairments equal the Listing. *See Lewis*, 236 F.3d at 514.   However, although Plaintiff challenges the ALJ's finding, she does not point to any record(s) to rebut the ALJ's conclusion that the record lacked evidence of nerve root compression.  Plaintiff also has not cited any evidence of positive straight-leg testing in both the seated and

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

supine positions. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)(noting that claimant is required to produce "evidence in an effort to establish equivalence.").

Rather, Plaintiff relies exclusively on the hearing testimony provided by Dr. Anthony Francis, a non-examining medical expert. In particular, Dr. Francis testified as follows: "I think with the finding of the peripheral neuropathy or the radiculopathy and then the subsequent surgery, the possibility of a 1.04 (A) equal is on the table." (T at 62). Dr. Francis reported that he "really [didn't] have a lot of information as to how [Plaintiff] did post-operatively" (*i.e.* following her discectomy of L4-5). (T at 62). Plaintiff's counsel reminded Dr. Francis that Plaintiff had an epidural steroid injection and continued having back pain and left radicular pain syndrome following her surgery. (T at 63). Dr. Francis said that her lack of success with surgery "wouldn't surprise" him, and opined that this treatment was evidence that the surgery did not produce the desired result, and offered that "you know, once again, I mean, that would go toward a 1.04 (A) equaling." (T at 63-64). When asked whether Plaintiff's diagnoses of fibromyalgia, diabetes, high blood pressure, and morbid obesity would provide further support for a finding that the impairments equaled Listing § 1.04 (A), Dr. Francis responded in the affirmative. (T at 64).

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

The ALJ discounted Dr. Francis's opinion, noting (correctly) that it was (a) equivocal and (b) not consistent with the medical record.  The ALJ acted within her discretion and her assessment of this non-examining physician's opinion was supported by substantial evidence.

Dr. Francis did not find that Plaintiff's impairments met or medically equaled Listing § 1.04 (A); he noted that he did not "have a lot of information" about Plaintiff's post-operative history and suggested "the possibility" of an equivalency finding with respect to §1.04 (A). (T at 62).  Moreover, the record contains evidence concerning Plaintiff's post-operative status that undermines the suggestion of a Listing equivalency and supports the ALJ's decision to discount Dr. Francis's suggestion of a possible Listing § 1.04 (A) equivalence.

For example, in a March 2010 treatment note, Plaintiff was reported to be doing "quite well" following surgery, albeit with "intermittent residual pain." (T at 379).  In August of 2010, Julie DeHart, a physical therapist, examined Plaintiff and recommended active exercise 2-3 times per week. (T at 592).  Later that month, Dr. Norman Staley, a non-examining State Agency review consultant, opined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk for about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday. (T at 601). Dr. Staley noted that Plaintiff's reported activities of daily

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

living, along with reports of examinations and imaging, supported his conclusion. (T at 607).  Dr. Guillermo Rubio affirmed Dr. Staley's opinion in December of 2010. (T at 702).  In October of 2011, Plaintiff reported that ibuprofen helped her back pain. (T at 807).

This evidence, combined with the equivocal nature of Dr. Francis's testimony (which is the only evidence cited by Plaintiff in support of her argument), is sufficient to sustain the ALJ's step three analysis.

**B.    Plaintiff's Mental Health Impairments & the Medical Opinion Evidence**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

In April of 2008, Amy Robinson, an examining counselor, working in collaboration with Dr. Scott Mabee, a psychologist, completed a

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

psychological/psychiatric evaluation of Plaintiff.   Robinson/Mabee diagnosed generalized anxiety disorder, dysthymic disorder, learning disorder (NOS), and personality disorder (NOS).   (T at 281).   They assessed marked limitations as to Plaintiff's ability to exercise judgment and make decisions, interact appropriately in public contacts, and respond appropriately to, and tolerate, the pressures and expectations of a normal work setting. (T at 282).   They described Plaintiff as "[a]cutely mentally ill." (T at 283).

Upon examination, they found that Plaintiff's thought processes were "likely to be marked by confusion, indecision, distractibility, and difficulty concentrating." (T at 287).   She was assigned an occupational Global Assessment of Functioning ("GAF") score[2] of 50-55 (T at 287), which is indicative of serious impairment in social, occupational or school functioning. *Onorato v. Astrue,* No. CV-11-0197, 2012 U.S. Dist. LEXIS 174777, at *11 n.3 (E.D.Wa. Dec. 7, 2012). Ms. Robinson and Dr. Mabee noted that Plaintiff "should" be able to understand and follow simple verbal and written instructions, but opined that she would likely be "unable to function in a typical work environment." (T at 288).

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

In January of 2009, Ms. Abigail Obsborne-Elmer, a licensed mental health counselor, working in collaboration with Dr. Mabee, completed another psychological/psychiatric evaluation. Elmer/Mabee assessed marked limitations with regard to Plaintiff's ability to relate appropriately to co-workers and supervisors, interact appropriately in pubic contacts, and respond appropriately to and tolerate the pressures and expectations of a normal work setting. (T at 305). Plaintiff was again described as "[a]cutely mentally ill." (T at 306).

Elmer/Mabee assigned an occupational GAF of 60 (T at 310), which is indicative of moderate symptoms or difficulty in social, occupational or educational functioning. *Amy v. Astrue*, No. CV-11-319, 2013 U.S. Dist. LEXIS 2297, at *19 n.2 (E.D.Wa Jan. 7, 2013). They opined that Plaintiff's mental health impairments would likely interfere with her ability to "tolerate the stress and pressures of a busy work environment," and that she would "benefit from a position that [had] minimal contact with other people." (T at 310). Ms. Elmer and Dr. Mabee recommended that Plaintiff receive a referral for vocational training and a job assistance program. (T at 310).

In June of 2009, Ms. Robinson and Dr. Mabee conducted another psychological/psychiatric evaluation. They assessed marked limitations with respect to Plaintiff's ability to relate appropriately to co-workers and supervisors and to

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

respond appropriately to and tolerate the pressures and expectations of a normal work setting. (T at 321). Plaintiff was described as "[c]hronically mental[ly] ill." (T at 322). Robinson/Mabee opined that Plaintiff's ability to obtain and maintain employment had decreased since the last evaluation. (T at 323).

In February of 2011, Dr. Mabee completed another psychological/psychiatric evaluation. He diagnosed major depressive disorder (recurrent, severe with psychotic features) and borderline personality disorder. (T at 800). He assigned a GAF score of 40 (T at 800), which suggests "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Tagin v. Astrue*, No. 11-cv-05120, 2011 U.S. Dist. LEXIS 136237 at *8 n.1 (W.D.Wa. Nov. 28, 2011)(citations omitted).

Dr. Mabee noted that Plaintiff could remember locations and simple work like procedures; understand, remember, and carry out simple verbal and written instructions; concentrated and attend for limited periods; make simple work-related decisions; ask simple questions and accept instructions; and adhere to basic standards of neatness and cleanliness. (T at 801).

The ALJ discounted the foregoing assessments, generally affording them little weight. (T at 37-39). For the following reasons, this Court finds that the ALJ's

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

assessment of these medical opinions was inconsistent with applicable law and is not supported by substantial evidence.

First, the ALJ improperly discounted the opinions as "check-off forms." (T at 37). It is correct than an ALJ may reject "check-off" forms that do not contain an explanation supporting the physician's assessment. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). However, the opinions here were hardly limited to check-off forms.

The April 2008 report was supported by a lengthy narrative that included a detailed history and results of a mental status examination. (T at 286). The January 2009 assessment was accompanied by a similar narrative, which also included the results of psychological testing. (T at 309). The June 2009 opinion was supported by a narrative summary that included a description of Plaintiff's barriers to employment. (T at 323). The February 2011 assessment contained detailed remarks explaining the opinion. (T at 802).

Second, the ALJ discounted the opinions based upon her improper discounting of Plaintiff's credibility. In particular, the ALJ noted that the opinions were completed as part of Department of Social and Health Services' evaluations. (T

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

at 37).  The ALJ speculated that because Plaintiff knew that her continued receipt of public assistance depended on these evaluations, she "could" have had an "incentive to overstate symptoms and complaints." (T at 37).  However, the examining providers noted no concerns about Plaintiff's credibility and rendered their findings after conducting mental status examinations and psychological testing.  In addition, as discussed below, the ALJ placed undue emphasis on Plaintiff's activities of daily living while giving insufficient weight to consistent findings of significant limitations concerning her ability to tolerate the stress demands of competitive, remunerative employment.

Third, the ALJ overemphasized aspects of the opinions indicating that Plaintiff could follow simple directions and perform some of the non-exertional demands of basic work activity. (T at 38).  Although Plaintiff was generally found capable of following simple directions and engaging in some basic work-related duties, the examining providers (including Dr. Mabee) were consistent in assessing significant limitations with regard to Plaintiff's ability to handle the stress demands of competitive, remunerative employment.[3] Stress is "highly individualized" and a

---

[3] Ms. Robinson and Dr. Mabee assessed marked limitations as to Plaintiff's ability to exercise judgment and make decisions, interact appropriately in public contacts, and respond appropriately to and tolerate the pressures and expectations of a normal work setting. (T at 282).  They noted that Plaintiff "should" be able to understand and follow simple verbal and written instructions, but opined that she would likely be "unable to function in a typical work environment." (T at 288).

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

person with a mental health impairment "may have difficulty meeting the requirements of even so-called 'low-stress' jobs." SSR 85-15.  As such, the issue of stress must be carefully considered and "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." *Id*.; *see also Perkins v. Astrue*, No. CV 12-0634, 2012 U.S. Dist. LEXIS 144871, at *5 (C.D.Ca. Oct. 5, 2012).   Here, the ALJ placed undue weight on the assessments that Plaintiff could understand and follow simple directions and perform some other basic demands, while not giving sufficient consideration to the repeated findings that Plaintiff could not meet the stress demands of work on a consistent basis.

Fourth, the ALJ placed undue emphasis on Plaintiff's activities of daily living. (T at 38).  The ALJ noted that Plaintiff attended to personal care, took care of pets, cooked meals, managed her finances, and engaged in household chores. (T at 34). The ALJ also discounted Plaintiff's credibility, noting that she indicated in a function report that she swam, hiked, and played sports on a daily basis. (T at 35). However, in context, Plaintiff was reporting that she *used* to perform those activities

---

Ms. Elmer and Dr. Mabee assessed marked limitations with regard to Plaintiff's ability respond appropriately to and tolerate the pressures and expectations of a normal work setting. (T at 305). They opined that her mental health impairments would likely interfere with her ability to "tolerate the stress and pressures of a busy work environment." (T at 310).

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

on a daily basis, but explained that this had "changed" and that she had "not been able to do any of the same [activities]." (T at 208).  Moreover, individuals with chronic mental health problems "commonly have their lives structured to minimize stress and reduce their signs and symptoms." *Courneya v. Colvin*, No. CV-12-5044, 2013 U.S. Dist. LEXIS 161332, at *13-14 (E.D.W.A. Nov. 12, 2013)(quoting 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.00(D)).  "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")(citations omitted).

Fifth, the ALJ assigned "great weight" to the opinion of Dr. Thomas McKnight, a medical expert who testified at the administrative hearing, although Dr.

McKnight had never examined Plaintiff. (T at 28, 30).  Dr. McKnight's assessment of generally mild limitations was contradicted by the findings of Dr. Mabee and his collaborators (as outlined above), as well as the April 2010 assessment of Dr. John Arnold, an examining psychologist.  Dr. Arnold diagnosed dysthymic disorder, borderline personality disorder, and assigned a GAF of 58 (T at 383), which is indicative of moderate symptoms or difficulty in social, occupational or educational functioning. *Amy v. Astrue*, No. CV-11-319, 2013 U.S. Dist. LEXIS 2297, at *19 n.2 (E.D.Wa Jan. 7, 2013).  Dr. Arnold assessed marked limitations with respect to Plaintiff's ability to interact appropriately in public contacts and moderate limitations as to her capacity to respond appropriately to and tolerate the pressures and expectations of a normal work setting. (T at 384).  Although he found that Plaintiff could perform some basic work activities, Dr. Arnold described Plaintiff as "[s]eriously disturbed." (T at 385).

The opinion of a non-examining, State Agency physician does not, without more, justify the rejection of an examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)(citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)). The rejection of an examining physician opinion based on the testimony of a non-examining medical consultant may be proper, but only where there are sufficient reasons to reject the examining physician opinion independent of the non-

examining physician's opinion. *See e.g., Lester*, 81 F.3d at 831; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). Here, for the reasons outlined above, the ALJ did not have sufficient reason to reject the Mabee assessments independent of the non-examining physician's opinion.

## C.   Remand for Calculation of Benefits

The court has discretion to remand a case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). An award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful purpose. *Id*. Courts have credited evidence and remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. In this case, as set forth above, the ALJ's reasons for discounting the Mabee opinions were legally insufficient. There are no outstanding issues and the record is fully developed. Thus, a finding that Plaintiff is disabled is required. Therefore, the ALJ's decision is reversed and this matter remanded for determination of benefits.

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB

**V. ORDERS**

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **Docket No. 15**, is **GRANTED.**

The Commissioner's motion for summary judgment, **Docket No. 16**, is **DENIED**.

This case is **REMANDED** to the Commissioner for further proceedings consistent with this Decision and Order.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of the Plaintiff, and keep the case open for a period of sixty (60) days to allow Plaintiff's counsel an opportunity to submit an application for attorneys' fees.

DATED this 18th day of August, 2014.


/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – ARNETT v COLVIN 13-CV-00329-VEB